JAMES C. NIELSEN (111889)
*jnielsen@nielsenhaley.com*
STUART E. JONES (104566)
*sjones@nielsenhaley.com*
NIELSEN, HALEY & ABBOTT LLP
100 Smith Ranch Road, Suite 350
San Rafael, California 94903
Telephone: (415) 693-0900
Facsimile: (415) 693-9674
Attorneys for Plaintiff,
MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

PHILIP L. PILLSBURY, JR. (SBN 72261)
*ppillsbury@pillsburycoleman.com*
KATHARINE ESSICK (SBN 219426)
*kessick@pillsburycoleman.com*
PILLSBURY & COLEMAN, LLP
600 Montgomery Street, 31st Floor
San Francisco, CA 94111
Telephone: (415) 433-8000
Facsimile: (415) 433-4816
Attorneys for Defendants NDO GROUP, LLC; YPP LLC; DANNY HABER;
ALON GUTMAN; and DION ROSS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, etc.,

Plaintiff,

v.

BLACKBOARD SPECIALTY INSURANCE COMPANY, etc., et al.,

Defendants.

---

AND RELATED COUNTERCLAIMS.

---

Case No. **4:18-cv-4410- YGR**

JOINT NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (*DUTY TO DEFEND*) BY PLAINTIFF MESA AND DEFENDANTS NDO GROUP, LLC, *et al.*, AGAINST DEFENDANT BLACKBOARD; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Date: May 28, 2019
Time: 2:00 p.m.
Courtroom: 1, 4th Floor
Hon. Yvonne Gonzalez Rogers
Complaint Filed: July 20, 2018

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ii

NOTICE OF MOTION AND MOTION 1

MEMORANDUM OF POINTS AND AUTHORITIES 1

STATEMENT OF ISSUES TO BE DECIDED 1

INTRODUCTION 1

FACTS 2

1. The Blackboard policies 2

2. The underlying *Knapp* action. 4

3. Blackboard's denial of coverage. 6

ARGUMENT 8

1. Standards for determining an insurer's duty to defend. 9

2. Coverage B: The Knapp action created the potential that NDO Group would be liable for personal injury from offenses committed during Blackboard's policy period. 10

A. Wrongful eviction. 11
B. Wrongful entry. 11
C. Invasion of the right of private occupancy 12
D. No Coverage B exclusions precluded Blackboard's duty to defend. 12

3. Coverage A: The *Knapp* action created the potential that NDO Group would be liable for "bodily injury" and "property damage" that occurred during Blackboard's policy period. 13

A. Bodily injury and property damage. 13
B. Trigger – injury and damage during the Blackboard coverage period. 13
C. The accident requirement. 14
D. No Coverage A exclusions precluded Blackboard's duty to defend. 16

4. Blackboard's duty to defend attached as of February 8, 2018. 17

5. Blackboard has an independent duty to defend even though Mesa defended NDO Group under a separate policy. 17

CONCLUSION 18

## TABLE OF AUTHORITIES

Cases


*Aerojet-Gen. Corp. v. Transp. Indem. Co.*,
17 Cal 4th 38 (1997) 10

*Allstate Ins. v. Overton*,
160 Cal. App. 3d 843 (1984) 16

*Anderson Bros., Inc. v. St. Paul Fire & Marine Ins. Co.*,
729 F.3d. 923 (9th Cir. 2013) 9

*Armstrong World Ind., Inc. v. Aetna Cas. & Surety Co.*,
45 Cal. App.4th 1 (1996) 10, 11, 14

*Aroa Marketing, Inc. v. Hartford Ins. Co. of Midwest*,
198 Cal. App. 4th 781 (2011) 10

*Atlantic Mut. Ins. Co. v. J. Lamb*,
100 Cal. App. 4th 1017 (2002) 13

*Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*,
175 Cal. App. 3d 1 (1985) 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) 9

*Chu v. Canadian Indemnity Co.*,
224 Cal.App.3d 86 (1990) 16

*Cunningham v. Universal Underwriters*,
98 Cal. App. 4th 1441 (2002) 11

*Davidson v. Welch*,
270 Cal. App. 2d 220 (1969) 16

*Eigner v. Worthington*,
57 Cal.App.4th 188 (1997) 14

*Fiberboard Corp. v. Hartford Acc. & Indem. Co.*,
16 Cal App 4th 492 (1993) 12

*General Acc. Ins. Co. v. West American Ins. Co.*
42 Cal. App. 4th 95 (1996) 12

*Gray v Zurich Ins. Co.*,
65 Cal 2d 263 (1966) 9

*Horrace Mann Ins. Co. v. Barbara B.*,
4 Cal 4th 1076 (1999) 9, 10

*Legarra v. Federated Mut. Ins. Co.*,
35 Cal. App. 4th 1472 (1995) 11

*Liberty Surplus Ins. v. Ledesma & Meyer Constr. Co., Inc.*
5 Cal. 5th 216 (2018) 14

*Martin Marietta Corp. v. Ins. Co. of North America*,
40 Cal. App. 4th 1113 (1995) 11

*Mirpad, LLC v. Cal. Ins. Guarantee Ass'n.*
132 Cal. App. 4th 1058 (2005) 10

*Montrose Chem. Corp. v. Superior Court*,
6 Cal.4th 287 (1993) 9

*Mt. Hawley Ins. Co. v. Assoc. Indus. Ins. Co.*,
2018 U.S. Dist. Lexis 169568 (C.D. CA 2018) 15

*Pines of La Jolla Homowners Assn. v. Industrial Indem.*,
5 Cal. App. 4th 714 16

*RLI Ins. Co. v. City of Visalia*,
297 F. Supp. 3d. 1038 (2018) 10

*Risley v. Interins. Exch. Of the Auto Club*,
183 Cal. App. 4th 196 (2010) 17

*Scottsdale Ins. Co. v. MV Transp.*,
36 Cal 4th 643 (2005) 9

*Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.*,
68 Cal. App. 4th 1030 (1998) 10

*Waranch v. Gulf Ins. Co.*,
218 Cal. App. 3d. 356 (1990) 12

*Waller v. Truck Ins. Exch.*,
11 Cal 4th 1 (1995) 17

*Wint v. Fid. & Cas. Co.*,
9 Cal. 3d. 257 17

*Zelda, Inc. v. Northland Ins. Co.*,
56 Cal. App. 4th 1252 (1997) 11

Statutes

Other Authorities

FRCP 56 (a) 9

Northern District of CA, Local Rule 7-2 9

## NOTICE OF MOTION AND MOTION

On May 28, 2019, at 2:00 p.m. in the United States District Court for the Northern District of California, Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, California, plaintiff Mesa Underwriters Specialty Insurance Company and defendants and cross-claimants NDO Group, LLC, Danny Haber, Alon Gutman, and Dion Ross will and hereby do move for partial summary judgment against Blackboard Specialty Insurance Company, formerly known as Hamilton Specialty Insurance Company and here called "Blackboard," per F.R.Civ.P. Rule 56 and Civil Local Rule 7-2. Per L.R. 7-2 (b)(3), the relief sought is a partial summary judgment declaring that Blackboard had a duty to defend NDO Group, LLC, Haber, Gutman and Ross (in this motion collectively called "NDO Group") against the claims asserted in an underlying action filed in the Superior Court of the State of California, County of Alameda, Action No. RG16-822634, entitled *Knapp, et al., v. Haber, et al* and that Blackboard's duty attached on February 8, 2018, when the *Knapp* complaint was tendered, or such date as the Court may find based on the undisputed facts.

This motion is based upon this notice, the following memorandum, the declaration of Stuart E. Jones with accompanying exhibits, the separate statement of material facts, as well as on all such further evidence, documents, and argument as may be presented at or before the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED

Per L.R. 7-4 (a) (3), the issue to be decided in the motion is whether the underlying *Knapp v. NDO Group* action created a potential for liability covered under one or more of Blackboard's policies, such that Blackboard owed a duty to defend, and, if so, when the duty attached.

### INTRODUCTION

In 2016, the NDO Group (et al.) purchased a single-room occupancy hotel in downtown Oakland with the goal of renovating the building. It started renovation work that summer and was greeted with a tenants' action alleging habitability claims, violations of tenancy ordinances, breach of covenant of quiet use and enjoyment, and so forth. As construction continued the tenants filed several amended complaints well into 2017 alleging a host of discrete injuries and damage. The

litigation was tendered to NDO Group's insurer for the 2015-2016 period (Mesa) and its insurer for the 2016-2018 period (Blackboard). Mesa agreed to defend and has done so through a recent tentative settlement. Blackboard, however, seized on the tenants' further allegations that NDO Group hired its contractors with an unspoken agenda of unlawfully harassing the tenants out of their rooms and seizing control of the whole building in order to rent it to gentrified newcomers. Adopting tones of high dudgeon, Blackboard proclaimed that that "this matter is denied in its entirety." (Jones Decl., Exh. 8, p. MSJ 196.)

Blackboard, however, simply disregarded the fact that the tenants' incendiary allegations were entirely unproven. If never proven, more importantly, NDO Group still faced potentially covered liability—detailed within—for mere inadvertent violations of the technicalities of governing ordinances or for negligently supervising overzealous contractors who invaded the tenants' rights, all resulting in a variety of injuries that fell both within Blackboard's "Coverage B" offenses of wrongful eviction, wrongful entry, or invasion of the right to private occupancy or, alternatively, its "Coverage A" for bodily injury or property damage caused by an accident. Each of these potential, covered exposures is detailed within. Mesa and NDO Group now join to seek an adjudication that Blackboard was wrong to deny and, instead, owed a duty to defend from the beginning, and breached that duty. This will be the major step in making Mesa and NDO Group whole for expenses of defending and settling the tenants' action by requiring Blackboard to contribute its (considerable) fair share.

## FACTS

### 1. The Blackboard policies.

On November 18, 2016—a few months after NDO Group had begun its ongoing work on the Hotel Traveler, as detailed within—NDO Group purchased a policy of commercial general liability insurance from Blackboard. (Jones Dec. Exh. 3, MSJ 43-101.) One year later NDO Group purchased a renewal policy from Blackboard. (Jones Dec. Exh. 5, MSJ 130-184.) The Blackboard policies share the same coverage form (CG 00 00 04 13), which contain two basic coverages—Coverage A (addressing liability for bodily injury and property damage) and Coverage

B (addressing liability for personal and advertising injury). Both coverages are implicated here, and their key terms provide as follows:

**SECTION I - COVERAGES**

**COVERAGE A: BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. * * *

b. This insurance applies to "bodily injury" or "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period;

* * *

**COVERAGE B: PERSONAL AND ADVERTISING INJURY LIABILITY**

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. …

* * *

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

* * *

**SECTION V DEFINITIONS**:

* * *

2. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses:

* * *

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

* * *

17. "Property damage means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of such physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Jones Decl. Exh. 3, MSJ pp.73-81; Exh. 5, MSJ pp. 159-173.)

**2. The underlying *Knapp* action.**

The *Knapp* action arises from the April 2016 purchase by NDO Group of the Hotel Travelers, a single residence occupancy (SRO) hotel in Oakland. Soon thereafter, NDO Group negotiated buyout agreements with some, but not all, of the 20-25 tenants. (Jones Decl. Exh. 1, Page 6:22-25, MSJ p. 6) But several tenants remained. (Jones Decl. Exh. 1, pp. 3:27 to 4:12; MSJ pp. 3-4.) In June 2016, NDO Group obtained building permits and informed the remaining tenants

that it had retained contractors who would be performing code work and renovations to units and common areas of the hotel. The work began in the summer of 2016 and remains ongoing. (*Id.* pp. 3:22 - 10:9; MSJ pp. 3-10.)

Just weeks later, on July 8, 2016, several tenants of the hotel, including underlying plaintiffs Daniels, Howe, Prather, and Chavez[1] filed the *Knapp* lawsuit against NDO Group. (Jones Decl., Exh. 1, MSJ pp. 1-19.**)** The *Knapp* complaint alleged eight causes of action: (1) violation of the Oakland Tenant Protection Ordinance; (2) breach of covenant of quiet use and enjoyment; (3) breach of implied warranty of habitability; (4) intentional infliction of emotional distress; (5) nuisance; (6) negligence; (7) wrongful eviction; and (8) elder abuse.

The complaint specified that the NDO Group defendants had "engaged in a pattern or practice to create, or have by their actions and/or omissions allowed to exist, conditions, conduct and a climate at the Property which have and continue to adversely affect Plaintiffs in violation of Oakland's Tenant Protection Ordinance (Oakland Municipal Code §§ 8.22.600, et seq.) and other state and local laws." (*Id.* Par. 16 (h) MSJ p. 4.) The plaintiffs alleged that, on the 5th and 6th floors, "[a]ll apartments except those occupied by Knapp and Daniels ha[d] been gutted to the wooden studs," and that a "pathway consisting of large holes through the floors of apartments though the ceiling of the apartments directly below" were created and "used for the purpose of clearing debris." (*Id.* Par. 16 (i). MSJ p. 4.) The complaint alleged that "others," impliedly contractors, "acting on [defendants'] behalf have also made unauthorized entries" (*id.* Par. 16 (n) MSJ p. 5.) and that the defendants had "turned the fifth and sixth floors into a construction zone." (*Id.* Par. 16 (o), MSJ pp. 5-6.) As a result, the *Knapp* plaintiffs claim "discomfort, annoyance, anxiety, and mental anguish" (*id.* Par. 22, MSJ p12), "substantial loss of personal property, rent overpayment and other costs and other damages" (*id.* Par. 27, MSJ p. 13), and that they had "suffered and continue to suffer … the loss of the use and quiet enjoyment of their rental property" as well as "physical, mental and emotional injuries." (*Id.* Par. 30, MSJ 13.) Plaintiffs allege that

[1] Mr. Chavez died in the summer of 2018, and his daughter Lisa Grisolias, successor to Orlando Chavez, deceased, was added as plaintiff to the *Knapp* action. Jones Declaration, Par. 18.

the defendants had created an ongoing "nuisance" that was "injurious to Plaintiffs' health, offensive to their senses, interfered with their comfortable enjoyment of life, personal property, and their interest in the Property." (*Id.* Par. 38, MSJ 15.) The *Knapp* plaintiffs thus accused the defendants of "failing to repair habitability defects" and "allowing nuisance" to continue (*id.*, Par. 42, MSJ p 15), conduct the plaintiffs characterized as "wrongfully endeavoring to recover possession." (*Id.* Par. 49, MSJ 16.)

On July 21, 2016, the tenants filed a first amended complaint alleging adding a ninth claim for violation of the Fair Employment and Housing Act (Jones Decl., Exh. 2, MSJ 20-42) and, on May 1, 2017—well after Blackboard's first policy had incepted in November 2016—a second amended complaint adding claims for Financial Elder Abuse and violations of the Unruh Civil Rights Act. (Jones Decl., Exh. 4, MSJ pp. 102-129.)

The second amended complaint continued to allege ongoing construction and renovation activities that disrupted the quiet enjoyment of the plaintiffs' homes and resulted in the constructive and wrongful evictions of all of them but Prather. (*Id.* Par. 14 (a)-(t), MSJ pp. 104-114.) By this time, NDO had cleared the fifth and sixth floors of all tenants except Daniels, and all units had been gutted to the studs except Daniels's unit. NDO's contractors had cut holes through Units 207, 307, 407, 507 and 607. Construction debris from second through sixth floors was carried on wheel borrows and then dumped down this shaft to the ground floor. Thereafter, the debris was transferred to open dumpsters on the street. (*Id.* Par. 14 (i), (j), MSJ pp 105-106.) The allegations included ongoing wrongful entries and noise and dust that made living in the hotel difficult. (*Id.* Par. 14 (m), (n), MSJ pp 106-107.)

On May 22, 2018, the tenants filed a Third Amended Complaint, expanding on these allegations. (Jones Decl. Exh. 11, MSJ pp 205-233.) Of particular note, this pleading alleged that, on July 12, 2017—while Blackboard's coverage was in effect—a construction worker shoved plaintiff Chavez against a wall, forced him down a stairwell, and pushed him so that he fell. (*Id.* Par. 15 (z). MSJ p 215-217.)

**3. Blackboard's denial of coverage.**

Mesa, which preceded Blackboard as insurer of NDO Group, agreed to defend the *Knapp* action under a reservation of rights and has defended it throughout. (Jones Decl. Par. 7.) According to Blackboard, it "first received the above Notice of Loss from Roy Williams, Claims Manager, Rice Insurance, LLC., on or about February 8, 2018." (Jones Decl., Exh. 8, p. MSJ 190.) Mesa's claims representative followed up on February 26, 2018. (Jones Decl., Exh. 6, MSJ p 185.) Having received no acceptance or denial, on April 12, 2018, Mesa's coverage counsel (David Demo of Pacific Law Partners) supplemented its tender and included a copy of the second amended complaint. (Jones Decl. Exh. 7 MSJ pp 186-187.) Counsel highlighted a series of events pleaded against NDO Group that took place well after Mesa's policy had expired and after November 2016, when Blackboard had taken over the risk, including the wrongful eviction of plaintiff Howe (vacated January 29, 2017), the bodily injury to plaintiff Chavez in an altercation with a contractor (July 12, 2017), the wrongful eviction of plaintiff Chavez (vacated July 25, 2017), and an ongoing pattern of habitability violations that implicated ongoing "offenses" under Coverage B (wrongful eviction, entry, invasion of the right of private occupancy), and that resulted in both alleged bodily injury to persons and damage to personal belongings from ongoing conditions, including leaks. (Jones Decl. Exh. 7, MSJ pp186-187.)

By way of a letter dated April 20, 2018, from the New York office of Blackboard's coverage counsel at Manning & Marder, Blackboard denied coverage. (Jones Decl., Exh. 8, MSJ pp 189-198.) The Manning firm's denial focused on the complaint's allegations of "Defendant's willful, intentional and malicious failure to repair and maintain the premises" (*id.*, p. MSJ 195), reasoning that this "failure may be willful, intentional or neglectful but is not accidental," such that "this matter is denied in its entirety." (*Id.* p. MSJ 196.) The Manning firm's denial added that the alleged damages would be "be excluded from coverage as it appears that the Insured received notice of some or all of the alleged 'bodily injury' or 'property damage' … in whole or in part, prior to the inception of the first policy period." (*Id.* p. MSJ 196.) These points, of course, involve only Coverage A; the Manning firm's denial said nothing about Coverage B, nor did it mention the second amended complaint.

Mesa's counsel Demo requested that Blackboard reconsider, again summarizing numerous discrete events that fell alone within the of Blackboard policies. (Jones Decl., Exh. 9, MSJ pp. 199-200 and 10, MSJ pp 201-204.) Blackboard, again through the Manning firm's New York office, again denied coverage. (Jones Decl. Exh. 12, MSJ pp 234-243.) This time addressing the Coverage B offenses of wrongful entry, eviction, or invasion of the right to private occupancy, the Manning firm focused on a Coverage B exclusion for "Knowing Violation of the Rights of Another" and concluded that "NDO and or its employees/members knowingly violated plaintiff rights and knew that their actions would inflict a personal and advertising injury upon plaintiffs." (*Id.* p. 9, MSJ p 242.) The letter does not, however, confront the palpable potential that the *Knapp* plaintiffs' hotheaded allegations of intentional misconduct would fail and that the NDO Group would be found liable only for technical, inadvertent violations of the governing ordinances. Nor did it address the numerous plaintiffs' discrete claims, the allegations of contractor misconduct and the defendants' implied exposure for negligent supervision of the contractors, or the specifics of the several allegations of bodily injury and damage to plaintiffs and their personal property. For example, the Manning letter takes no position as to the bodily-injury claim asserted on behalf of plaintiff Chavez from the altercation—during Blackboard's coverage—with a contractor. (Jones Decl., Exh. 11 Par. 15 (z), Page 11:27-13:3, MSJ pp 215-217.)

NDO Group then retained its own coverage counsel, who also wrote to the Manning firm on July 27, 2018, to invite Blackboard to reconsider its position under Coverages A and B of its policy. (Jones Decl., Exh **13** p. 2, MSJ 243-247.) NDO Group's coverage counsel also pointed out that Blackboard had a separate and independent duty to defend under its policy and, furthermore, that a defense under the Mesa policy alone was insufficient because the Blackboard policy covers a longer period of potential liability and, unlike the Mesa policy, does not exclude statutory treble damages. (*Id.*, pp. 2-3, MSJ 244-245.) Blackboard did not respond.

## ARGUMENT

Summary judgment should be granted when there are no genuine and disputed issues of material fact, and when, viewing the evidence most favorably to the non-moving party, the movant

is clearly entitled to prevail as a matter of law. F.R.Civ.P. Rule 56 (a) (permitting "summary judgment" on "part of each claim); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); see, e.g., *Anderson Bros., Inc. v. St. Paul Fire & Marine Ins. Co.*, 729 F.3d 923, 928 (9th Cir. 2013) (affirming partial summary judgment on the duty to defend). As will appear, this is such a case.

**1. Standards for determining an insurer's duty to defend.**

A "liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993), citing *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263 (1966). An "insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 299 (1993) (italics orig., cit. omitted). The duty to defend exists unless "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Id.* at 301. That the duty to defend requires only a showing of a potential for liability is "one reason why it is often said that the duty to defend is broader than the duty to indemnify." *Id.*

To show that a duty to defend has attached, an insured need only "prove the existence of a *potential for coverage*." *Montrose*, 6 Cal.4th at 300 (italics orig.). In contrast, to show that no duty exists, "the insurer must establish *the absence of any such potential*." *Id.* (italics orig.). "In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it *cannot*." *Id.* (italics orig.). Under such a test, a duty to defend may exist "even where coverage is in doubt and ultimately does not develop." *Id.* at 295 (cit. & quots. omitted). "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 655 (2005).

"If coverage depends on an unresolved dispute over a factual question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend." *Mirpad, LLC v.*

*Cal. Ins. Guarantee Ass'n,* 132 Cal.App.4th 1058, 1068 (2005). Similarly, it is well settled that an insurer must provide a defense "where an exclusion arguably applies but may reasonably be interpreted to be inapplicable to the alleged facts." *Aroa Marketing, Inc. v. Hartford Ins. Co. of Midwest*, 198 Cal. App. 4th 781, 786 (2011). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).

"Because the scope of coverage under a written insurance policy is solely a matter for judicial interpretation, an insurer's duty to defend under a policy is an issue amenable to resolution on summary judgment." *RLI Ins. Co. v. City of Visalia*, 297 F.Supp.3d 1038, 1053 (E.D.Cal. 2018) (cits. & quots. omitted).

In a case like this one, where there is more than one liability insurer on the same risk (albeit for different time periods), each insurer's duty to defend is assessed independently, "since the duty of each is independent of whatever duty another might have." *Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co,* 68 Cal. App. 4th 1030, 1033 (1998); see also *Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 70 (1997) (each insurer has separate and independent duty to defend under its own policy).

**2. <u>Coverage B</u>: The Knapp action created the potential that NDO Group would be liable for personal injury from offenses committed during Blackboard's policy period.**

At its core, the *Knapp* action addressed issues of tenancy and habitability. Blackboard's Coverage B, applicable to listed personal-injury "offenses" committed during the policy period, includes just such tenancy-related offenses: "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room …" (Jones Decl., Exh. 3, p. MSJ 87; Exh. 5, p. MSJ 173.)

Notably, the listed Coverage B offenses, by their nature, are all intentional torts; none is subject to the "accident" requirement from Coverage A (discussed more within). And remarkably, the *Knapp* action alleges all three of the covered tenancy-related offenses—that the NDO Group' (or its contractors') conduct committed during Blackboard's November 2016-2018 coverage

periods resulting in wrongful eviction, wrongful entry, and invasion of the right of private occupancy. Any one of these allegations sufficed to trigger Blackboard's duty to defend. Collectively they render the coverage conclusion here shockingly simple. We address each below.

**A. Wrongful Eviction.**

A "wrongful eviction" under Coverage B occurs only if the person recovering the property (the insured) did not have the right to dispossess the other party from the property, e.g., as in a landlord-tenant relationship. *Cunningham v. Universal Underwriters,* 98 Cal.App. 4th 1141, 1148 (2002); *Zelda, Inc. v. Northland Ins. Co.*, 56 Cal.App.4th 1252, 1265 (1997). A landlord's actual or constructive dispossession of a tenant from leased premises is deemed an "eviction" for Coverage B purposes. *Legarra v. Federated Mut. Ins. Co.,* 35 Cal.App.4th 1472, 1484 (1995).

In the *Knapp* action, several of the Plaintiffs contend that they moved out during Blackboard's November 2016-2018 coverage period due to the adverse conditions caused by the renovation work. For example, plaintiff Howe moved out on January 29, 2017 (*id.*, Par. 14 (o); p. MSJ 110-111); Chavez moved out on July 25, 2017. (Jones Decl., Exh. 11, Par. 15 (z); p. MSJ 215-217.) Each asserted separate claims for wrongful eviction and violation of the warranty of quiet enjoyment. On these facts, standing alone, Blackboard had a duty to defend the NDO Group.

**B. Wrongful Entry.**

"Wrongful entry" under Coverage B includes trespass and nuisance claims even where those claims do not involve an intent to dispossess the occupant. *Martin Marietta Corp. v. Ins. Co. of North America* 40 Cal.App.4th 1113, 1125 (1995). "Trespass may be by personal intrusion or failure to leave; by throwing or placing something on the land; or by causing the entry of some other person [or property]." *Id.* at 1132 (quots. omitted). Similarly, nuisance claims involving physical entry onto another's property constitute a covered "wrongful entry." *Id.*

Plaintiff Daniels alleged that NDO Group, and others acting on their behalf, have made unauthorized entries into his unit. (Jones Decl**.** Exh. 4, Par. 14 (m); p. MSJ 109, p. 8; Exh. 11, Par. 16 (v); pp. MSJ 212-213.) Plaintiff Howe allegedly suffered holes punched into his unit from

construction work outside. (Jones Decl., Exh. 4, p. 10:11-12; p. MSJ 111.) The plaintiffs do not say when these entries took place; unless Blackboard can disprove that they took place during Blackboard's coverage period, they independently suffice to establish Blackboard's duty to defend.

**C. Invasion of the right of private occupancy.**

Invasion of right of private occupancy covers actions for nuisance or other torts based on interference with another's use, enjoyment, or occupancy of real property *other than* "wrongful entry" or "wrongful eviction." *Waranch v. Gulf Ins. Co.*, 218 Cal.App.3d 356, 361 (1990); *Fibreboard Corp. v. Hartford Acc. & Indem. Co.*, 16 Cal.App.4th 492, 513 (1993). Thus, for example, noninvasive nuisance claims may be covered under this Coverage B offense. *General Acc. Ins. Co. v. West American Ins. Co.* 42 Cal.App.4th 95, 103-104 (1996).

In the *Knapp* action, several of the plaintiffs contend that NDO breached the tenant's right to quiet enjoyment by construction activity during Blackboard's post-2016 coverage. For example, plaintiff Howe complained of noise and dust in his unit and the common areas until he moved out on January 29, 2017 (Jones Decl., Exh. 4, Par. 14 (o); p. MSJ 10-111) and Chavez complained of noise and dust in his room and the common areas until he moved out on July 25, 2017 (Jones Decl., Exhibit 10, Par. 15 (z); pp. MSJ 215-216.) Each tenant asserted separate claims for violation of the warranty of quiet enjoyment because of such conduct. (Jones Decl., Exh. 4, Par. 23-25; pp. MSJ 116-117) The offenses laid out in the Howe and Chavez claims plainly were committed during the first year of Blackboard coverage that began in November 2016.

**D. No Coverage B exclusions precluded Blackboard's duty to defend.**

The Manning firm's April 20, 2018, denial letter on Blackboard's behalf did not even mention Coverage B, let alone any of its exclusions. (Jones Decl., Exh. 8, p. MSJ 189.) Its later letter of June 18, 2018 (*id.* Exh. 12, p. MSJ 234) did and mentioned a few (*Id.* pp. 236-236) but relied on but one: the exclusion for "knowing violation of the rights of another." (*Id.* p. 242.) Blackboard then accepted the *Knapp* accusations of intentional misconduct and again denied coverage because, according to Blackboard, NDO Group "knowingly violated plaintiff rights and

knew that their actions would inflict a personal and advertising injury upon plaintiffs." (*Id.*)

The problem with Blackboard's approach is that an "insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds." *Atlantic Mut. Ins. Co. v. J. Lamb*, 100 Cal.App.4th 1017, 1038-39 (2002). Because the *Knapp* plaintiffs did not need to prove any knowing violation in order to establish liability, many possible worlds existed in which the exclusion would not apply. As such, under *J. Lamb*, such an exclusion could not eliminate Blackboard's duty to defend under Coverage B as a matter of law.

**3. <u>Coverage A</u>: The *Knapp* action created the potential that NDO Group would be liable for "bodily injury" and "property damage" that occurred during Blackboard's policy period.**

Most lawsuits that implicate insurance for commercial general liability do so either under Coverage A or Coverage B. Habitability and tenancy-related actions, however, often implicate both coverages, and the *Knapp* action was no exception. Thus, in addition to the tenancy-related claims addressed above under Coverage B, Blackboard was required under Coverage A to defend against any suit that potentially alleged "property damage" (physical injury to tangible property) caused by an "occurrence" (an accident). (Jones Decl. Exh. 3, pp. MSJ 85-087); Exh. 5, pp. MSJ 171-174.)

**A. Bodily injury and property damage.**

The complaint tendered to Blackboard plainly asserted "bodily injuries" due to the construction work. (Jones Decl., Exh. 1 Complaint ¶¶ 16 (h), 22, 30, 34, 38, 39, 42, 43, and 49.) The complaint also alleged damage to the plaintiffs' personal property, alleging that the ongoing renovation work by NDO Group's contractors was "injurious to Plaintiffs' health, offensive to their senses, interfered with their comfortable enjoyment of life, personal property …." (*Id.* Par. 38.) The second amended complaint more specifically asserted such damage by way of water leaks due to the renovation work. (Jones Decl., Exh. 4, p. 11:22-23; p. MSJ 112.)

**B. Trigger – injury and damage during the Blackboard coverage period.**

Blackboard's Coverage A requires the alleged injury or damage to have occurred during its

coverage period. (Jones Decl. Exh. 4 MSJ 73; Exh. 11 MSJ 159.) This is the so-called "trigger of coverage," which is a "term of convenience used to describe what must happen in the policy period to give rise to insurance coverage." *Armstrong World Ind., Inc. v. Aetna Cas. & Surety Co.*, 45 Cal.App.4th 1, 39 (1996). Here, of course, the original *Knapp* complaint, complaining about the commencement of construction renovation, was filed in July 2016 (Jones Decl. Exh. 1), while the first Blackboard policy incepted a few months later in November 2016. (Jones Decl. Exh. 3, MSJ pp 43-101; Exh 5, pp130-184.) The construction, however, continued into Blackboard's coverage, and even up to today. Indeed, if Blackboard had any question as to whether the ongoing construction activities of the sort alleged in the *Knapp* plaintiffs' original complaint had continued into Blackboard's coverage period—and thus caused new injuries and damages in that period—it was required to ask. See, e.g., *Eigner v. Worthington*, 57 Cal.App.4th 188, 198 (1997) ("State Farm assumed the risk of refusing to defend based solely on a review of the complaint which, on its face, should have alerted a reasonable insurer of the need to further investigate.") Blackboard did not ask, however, nor did it question the fact of construction and injury during its coverage period. On these facts, then, the Blackboard coverage was triggered.

**C. The accident requirement.**

Finally, Blackboard's Coverage A requires the alleged injury or damage to have been caused by an "occurrence," defined to mean an "accident." (Jones Decl. Exh. 3, MSJ pp 73-88; Exh. 5, MSJ pp 159-174.) Last year the California Supreme Court explained just what is required to satisfy this "accident" requirement, concluding that an insured sued for negligently hiring or supervising third parties that commit even non-accidental, injurious conduct may be deemed accidental for insurance purposes. *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co., Inc.*, 5 Cal.5th 216, 220 (2018). As explained by the Court: "[T]he term 'accident' is more comprehensive than the term 'negligence' and thus includes negligence. Accordingly, a policy providing a defense and indemnification for bodily injury caused by an accident promise[s] coverage for liability resulting from the insured's negligent acts." *Id.* at 221-222 (internal quotes, cits., italics & fns. omitted, ellipses the court's). Under *Ledesma & Meyer*, then, injurious conduct

of a third party "may be deemed an unexpected consequence of [the insured's] independently tortious acts of negligence." *Id.* at 229.

Nor does this broad coverage for an insured's negligence limit itself to claims involving third-party criminal conduct, as addressed in *Ledesma & Meyer*. That decision already has been applied, for example, in the context of a construction-site injury in *Mt. Hawley Ins. Co. v. Assoc. Indus. Ins. Co*., 2018 U.S. Dist. Lexis 169568 *15 n. 8 (C.D. Cal. 2018), where the district court noted that a "logical chain of causation between [the insured's] late delivery of the frames and [the underlying plaintiff's] injuries" would, even if "attenuated," establish an accident sufficient to trigger a duty to defend. The *Mt. Hawley* court compared such a construction-site scenario to *Ledesma & Meyer*, which recognized "a potential causal connection between the employer's negligence and the sexual abuse." *Id.*

The April 20, 2018, Blackboard denial letter from Manning & Marder thus erred fundamentally when "denied in its entirety" the tender because NDO Group's alleged "failure **may be** willful, intentional or **neglectful** but is not accidental." (Jones Decl., Exh. 8, p. MSJ 189, emph. added.) Under *Ledesma & Meyer*, such allegations do indeed suffice to satisfy the "accident requirement."

In this regard, we are mindful that the Manning firm's denial letters on Blackboard's behalf fixated on the *Knapp* plaintiffs' additional allegations of intentional misconduct. The error in this fixation, of course, is that it ignores the potential that such allegations will fail in trial and that liability will be established on non-intentional grounds that Blackboard itself conceded amounted to "neglectful" conduct, as quoted just above. More specifically, for example, the *Knapp* plaintiffs broadly allege that the NDO Group hired and supervised renovation contractors who, it is claimed, generated such noise and dust, improperly entered units, and even roughed up plaintiffs. Even if believed, such allegations create the potential that NDO Group will be found liable for negligently hiring and supervising those contractors. Such allegations more than suffice to implicate an "accident" even though the *Knapp* complaint did not use the word "negligence." The California Supreme Court has long made "it clear that the bare allegations of the claimant's complaint do not

control. If the broad charge made, which claims an intentional or willful tortious act, contains within it the potentiality of a judgment based upon nonintentional conduct, the indemnitor becomes liable to defend." *Davidson v. Welch*, 270 Cal.App.2d 220, 234 (1969); accord *Allstate Ins. Co. v. Overton*, 160 Cal.App.3d 843, 851 (1984).

Moreover, the denial letters' contentions about non-covered intent, even if applicable to some of the alleged conduct, would need to extend to all of it in order to defeat Blackboard's duty to defend. To consider why, consider *Chu v. Canadian Indem. Co.*, 224 Cal.App.3d 86 (1990), where the insured developer sought liability coverage for discrete construction defects discovered after condominium units were sold despite the insured having knowledge of numerous and pervasive *other* defects in the properties at the time of sale. The insurer denied coverage, arguing that the insured knew of the loss or "occurrence" before the policy incepted. The court disagreed, holding that "knowledge of one defect or set of defects is not the equivalent of knowledge of other, distinct defects in the same project," and that "each set of distinct defects must be analyzed separately to determine whether [the developer] had knowledge of those defects at the time they sold the units." *Id.* at 97-98; see also, *Pines of La Jolla Homeowners Assn. v. Industrial Indem.* (1992) 5 Cal.App.4th 714, 722 & fn. 5 (suggesting that each category of construction defect or damage implicated a separate occurrence).

Plainly, then, Blackboard's bold denial of its duty to defend the NDO Group based on the supposed lack of an accident or the impact of alleged intentional misconduct was flat wrong.

**D. No Coverage A exclusions precluded Blackboard's duty to defend.**

Addressing Coverage A, the Manning firm's April 20, 2018, denial letter on Blackboard's behalf first relied on an exclusion applicable where NDO Group, before the policy incepted in November 2016, "knew that the 'bodily injury' or 'property damage' had occurred, in whole or in part." (Jones Decl., Exh. 8, p. MSJ 196.) Here, however, while some injuries may have been alleged in the *Knapp* action before Blackboard's policy, the discrete injuries and damages described above occurred solely within that period and had not occurred "in whole or in part" before. And, of course, under *Chu*, 224 Cal.App.3d 86, discussed just above, each discrete injury

claimed must be evaluated separately for this purpose. Blackboard's known-injury limitation did nothing to affect Blackboard's duty to defend.

The same letter went on to rely on exclusions for "Property you [that is, NDO Group] own, rent, or occupy," and for "expenses incurred by the Insured … for any repair, replacement, enhancement, restoration or maintenance of the Property." (Jones Decl., Exh. 8, p. MSJ 197.) The *Knapp* plaintiffs, however, obviously did not sue for damage or repairs to the hotel—NDO Group's property—but rather for damages to their persons and personal property as well as interference with their tenancies. Blackboard's exclusions afforded no basis to deny a duty to defend.

**4. Blackboard's duty to defend attached as of February 8, 2018.**

An insurer's duty to defend arises when it "becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 19 (1995). Blackboard admits that it "first received the above Notice of Loss from Roy Williams, Claims Manager, Rice Insurance, LLC., on or about February 8, 2018." (Jones Decl., Exh. 8, p. MSJ 190.) Mesa followed up with a tender on tender on February 26, 2018, attaching the *Knapp* complaint. (Jones Decl., **Exh. 6**.) Blackboard's duty to defend attached as of February 8, 2018, and the Court should so adjudge.

**5. Blackboard has an independent duty to defend even though Mesa defended NDO Group under a separate policy.**

"[W]here more than one insurer owes a defense, a defense by one [Mesa in this case] constitutes no excuse of the failure of any other insurer [Blackboard] to perform." *Wint v. Fid. & Cas. Co.*, 9 Cal.3d 257, 263 (1973). Not only does Blackboard have an independent duty to defend, its policies cover a longer relevant time period than Mesa's. And unlike the Mesa policy, the Blackboard policy does not contain an express exclusion of coverage for treble damages. NDO Group contends that neither California's Insurance Code Section 533 (which prohibits coverage of punitive damages) nor public policy prohibits insurance coverage for treble damages, which are sought by the *Knapp* plaintiffs. *Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal.App.3d 1, 32-33 (1985). In short, Blackboard may stand to lose more than Mesa, so that Mesa's defense cannot possibly excuse Blackboard from its own duty to defend. *See Wint, supra; Risely v. Interins. Exch.*

*of the Auto Club,* 183 Cal.App.4th 196, 210 (2010).

**CONCLUSION**

From the date it received notice of the *Knapp* action on February 8, 2018, Blackboard knew that its insureds had been sued for wrongful eviction, wrongful entry, and other invasion of the right to private occupancy potentially within Blackboard's Coverage B as well as bodily injury and property damage potentially within Blackboard's Coverage A, all taking place during Blackboard's coverage period. Mesa and NDO Group (that is, NDO Group, LLC, Danny Haber, Alon Gutman, and Dion Ross) therefore respectfully urge the Court to grant this motion and adjudge that Blackboard owed a duty to defend the latter in the *Knapp* action as of February 8, 2018.

March 12, 2019

Respectfully submitted,

NIELSEN, HALEY & ABBOTT LLP

By: /s/ Stuart E. Jones .
James C. Nielsen
Stuart E. Jones
Attorneys for Plaintiff

PILLSBURY & COLEMAN, LLP

By: /s/ Katharine Essick .
Philip L. Pillsbury, Jr.
Katharine Essick
Attorneys for Defendants NDO Group, LLC, Danny Haber, Alon Gutman, and Dion Ross