James E. Gibbons (State Bar No. 130631)
*jeg@manningllp.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999
Attorneys for BLACKBOARD SPECIALTY INSURANCE COMPANY formerly known as HAMILTON SPECIALTY INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BLACKBOARD SPECIALTY INSURANCE COMPANY formerly known as HAMILTON SPECIALTY INSURANCE COMPANY,<br><br>Defendants. | Case No. 4:18-CV-4410-YGR<br><br>**1. OPPOSITION OF BLACKBOARD SPECIALTY INSURANCE COMPANY TO JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DUTY TO DEFEND, AND**<br>**2. BLACKBOARD SPECIALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT** |
| AND RELATED CROSS-ACTIONS | Date: May 28, 2019<br>Time: 2:00 p.m.<br>Crtrm.: 1, 4th Floor<br>Hon. Yvonne Gonzalez Rogers |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

## TABLE OF CONTENTS


**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. BACKGROUND .......... 1

A. The Blackboard Policies. .......... 2

1. Coverage A. In relevant part, Coverage A obligated Hamilton to: .......... 2

2. Coverage B. Coverage B, in relevant part, obligated Hamilton to: .......... 4

B. The Underlying Habitability Litigation. .......... 4

C. Blackboard's Proper Denial of Coverage. .......... 9

ARGUMENT .......... 9

I. STATEMENT OF ISSUES .......... 9

II. STANDARDS FOR DETERMINING THE DUTY TO DEFEND .......... 9

III. BLACKBOARD OWES NO DUTY TO DEFEND THE UNDERLYING LITIGATION, BECAUSE THE COMPLAINT ALLEGED NO "ACCIDENT" BUT SIMPLY INTENTIONAL CONDUCT CAUSING DAMAGE THAT PREDATED THE POLICY'S INCEPTION .......... 10

A. There is No Potential Coverage under Coverage A, because There Is No Accidental Occurrence, the Claims are based on Intentional Conduct, and the Intended Damage was Known to the Insureds prior to Blackboard's policy inception. .......... 10

B. There is No Potential Coverage under Coverage B. .......... 14

IV. CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Albert v. Mid-Century Ins. Co.*
236 Cal.App.4th 1281, 1291 (2015)....................10

*Allstate Ins. Co. v. Overton* (1984)
160 Cal.App.3d 843....................13

*Anthem Electronics, Inc. v. Pacific Employers Ins. Co.*,
302 F.3d 1049,....................10

*Atlantic Mut. Ins. Co. v. J. Lamb*,
100 Cal.App.4th 1017, 138-39 (2002) ....................15, 16

*B& E Convalescent Ctr. v. State Comp. Ins. Fund*,
8 Cal.App.4th 78, 99 (1992)....................16

*Burlington Ins. Co. v. Devdhara*
(N.D.Cal. Sep. 23, 2010 ....................12

*California Ins. Guar. Ass'n v. Wood*,
217 Cal.App.3d 944, 949 (1990)....................10

*Chu v. Canadian Indem. Co.* (1990)
224 Cal.App.3d 86....................13

*Davidson v. Welch* (1969)
270 Cal.App.2d 220, 238....................12

*Delgado v. Interinsurance. Exch. of Automobile Club*,
47 Cal.4th 302 (2009)....................11

*Fire Ins. Exch. v. Superior Court*,
181 Cal.App.4th 388, 396 (2010)....................10

*Hotchalk, Inc. v. Scottsdale Ins. Co.*,
217 F. Supp. 3d 1058,....................9

*Knapp, et al. v. Haber*, et al., County of Alameda
Superior Court Action No. RG16-822634 ....................1

*Markel Int'l Ins. Co. v. W. PA Child Care*, LLC
(M.D.Pa. 2011)....................15

*Marvisi v. Greenwich Ins. Co.*
(S.D.N.Y. May 22, 2006 ....................15

*McMillan Cos. LLC v. American Safety Indem. Co.*,
233 Cal.App.4th 518, 533 (2015)....................10

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

*Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645 .......... 14

*Nationwide Ins. Co. v Lexington Relocation Servs., LLC* (N.D.Miss. Mar. 24, 2014) .......... 15

*Pines of La Jolla Homeowners Assn. v. Industrial Indemnity* (1992) 5 Cal.App.4th 714 .......... 14

*Swain v. California Casualty Ins. Co.* (2002) 99 Cal.App.4th 1 .......... 11

*Travelers Prop. Cas. Co. of Am. v. Mericle* (M.D.Pa. Aug. 31, 2010, No. 3:09-CV-1747) .......... 15

*Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 19 (1995) .......... 9

**STATUTES**

Civil Code § 1941.1 .......... 7

Manning & Kass
Ellrod, Ramirez, Trester LLP
Attorneys at Law

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Blackboard Specialty Insurance Company submits the following Memorandum of Points and Authorities in Opposition to the Joint Motion for Partial Summary Judgment on the Duty to Defend filed by Mesa Underwriters Specialty Insurance Company and NDO Group, LLC, YPP LLC, Danny Haber, Aon Gutman, and Dion Ross ("NDO Group"). In that motion, moving parties seek partial summary judgment on Blackboard's duty to defend an underlying habitability lawsuit filed against Blackboard Insurance Company's insured NDO Group.

**NOTICE OF MOTION FOR SUMMARY JUDGMENT**

In addition, and pursuant to the Court's order of February 11, 2019 (Dkt. 48), Blackboard Specialty Insurance Company moves for summary judgment against Mesa Underwriters Specialty Insurance Company and NDO Group, LLC, YPP LLC, Danny Haber, Aon Gutman, and Dion Ross pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion will be heard on May 28, 2019, at 2:00 p.m., in Court 1, 4th Floor, of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California.

The grounds for summary judgment are that Blackboard Specialty Insurance Company owes no duty to defend the NDO Group in the underlying habitability action, Knapp, et al. v. Haber, et al., County of Alameda Superior Court Action No. RG16-822634. Therefore, judgment is warranted against Mesa Underwriter's complaint and NDO Group's cross-claim.

Because Blackboard does not dispute any of the Moving Parties' undisputed facts and relies on the same evidentiary record as Moving Parties, and to avoid unnecessary duplication and waste of resources, Blackboard incorporates and adopts Moving Parties' Separate Statement and evidentiary record as its own.

Accordingly, and for the reasons set out below, the Court should deny the Motion for Partial Summary Judgment and grant Blackboard's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Mesa Underwriters sues Blackboard for declaratory relief, equitable contribution, equitable indemnity, and apportionment, arguing that Blackboard has an obligation to participate in the defense and indemnity of joint insured NDO Group in an underlying habitability lawsuit.

Cross-claimant NDO Group sues Blackboard for breach of contract and insurance "bad faith," arguing that Blackboard improperly refused to defend it against the habitability lawsuit.

### A. The Blackboard Policies.

On November 18, 2016, Hamilton Insurance Company issued Policy No. AAHS100006965 to Named Insured NDO Group, LLC, effective November 18, 2016 to November 18, 2017. The Named Insured's "business description" was "Apartment Building."[1] Moving Parties' Separate Statement, No. 2, Exh. 3, MSJ 43-101; Exh. 5, MSJ 130-184.

The Commercial General Liability Coverage section of the policy was written on form CG000104-13, as amended by various endorsements. Jones Decl., Exhs. 3, 5, MSJ 159. The policy provided two basic liability coverages, Coverage A and Coverage B. Coverage A covered liability for Bodily Injury and Property Damage, while Coverage B covered Personal and Advertising Injury Liability.

#### 1. Coverage A. In relevant part, Coverage A obligated Hamilton to:

> pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Sep. Stmt., No. 3, Jones Decl., Exhs. 3, 5; MSJ 73-87 AND MSJ 159-173.

The insuring clause contained additional requirements for coverage. First, the bodily injury or property damage must be caused by an occurrence during the policy period. The policy defined "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Sep. Stmt., No. 5, Jones Decl., Exhs. 2 and 3, MSJ 173. And, second,

[1] The policy was renewed on the same terms and conditions the following year under policy no. AAHS1000016463.



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

no insured (or insured's employee authorized to receive or give notice of an occurrence) must have known that the bodily injury or property damage had occurred prior to the policy period. If so, the damage occurring prior to the policy period will be deemed to have occurred prior to the policy period.

In this regard, the policy provided:

> (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II-Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Sep. Stmt., No. 3, Jones Decl., Exhs. 3, 5; MSJ 73, 159.

Thus, if an insured knew that bodily injury or property damage had occurred prior to the policy period, then any continuation, change or resumption of that bodily injury or property damage would be deemed to have been known during the prior policy period.

The policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Sep. Stmt., No. 5, Jones Decl., Exh. 3, MSJ 171. The policy defined "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or [¶] b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Sep. Stmt., No. 3, Jones Decl., Exhs. 3, 5; MSJ 85, 171.

Coverage A was further limited by an exclusion named "Expected or Intended Injury."



Manning & Kass Ellrod, Ramirez, Trester LLP Attorneys at Law

This exclusion barred coverage for:

> Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Sep. Stmt., No. 3, Jones Decl., Exhs. 3, 5; MSJ, 160.

**2. Coverage B. Coverage B, in relevant part, obligated Hamilton to:**

> pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

Sep. Stmt., No. 4, Jones Decl., Exhs. 3, 5; MSJ 164.

The Coverage B insuring clause specified that the personal and advertising injury had to be committed during the policy period. The policy defined personal and advertising injury as injury arising out of certain "offenses," including "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor[.]"

Sep. Stmt., No. 5, Jones Decl., Exhs. 3, 5; MSJ 173.

Coverage B was limited by an exclusion entitled "Knowing Violation Of Rights Of Another." It provided that the policy would not cover:

> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."
>
> Sep. Stmt., Nos. 1, 2; Jones Decl., Exhs. 3, 5; MSJ 164.

**B. The Underlying Habitability Litigation.**

On July 8, 2016, several tenants of an apartment building owned by insured NDO Group –



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

T. Baumann Knapp, Joshua Daniels, William Prather, Peter Howe, Orlando Chavez, and Don Sparks – filed suit in Alameda County Superior Court, Case No RG16822634, against the insureds, Danny Haber, Dion Ross, Alon Gutman, and NDO Group. Sep. Stmt., No. 6. On July 21, 2016, plaintiffs filed a First Amended Complaint, adding a cause of action for violation of the Fair Employment and Housing Act, and served the pleading on defendants. Jones Decl., Exh. 2.

In the pleading, the tenants alleged a conscious, preconceived course of conduct by the insureds to drive them out so that the insured property could be rehabbed and then rented for market value rents.

Specifically, plaintiffs claimed that on or about April 1, 2016, the insureds bought a rent-control protected residential hotel known as "Hotel Travelers" or "Hotel Travelers Oakland," located at 392 11th St, Oakland, California. The complaint further alleged that the tenants were low-income individuals and that the hotel had historically been used as a single-room occupancy ("SRO") hotel. Each of the plaintiffs was or had been a tenant of the hotel. Sep. Stmt., No. 11, Jones Decl., Exh. 2, MSJ 21, ¶¶ 10, 16.

The complaint further alleged that since it bought the property, NDO had engaged in a preconceived campaign to drive out the tenants so that the property could be rehabbed, taken out of rent control, and rented for market prices. Specifically, the tenants alleged that the owners had "engaged in a pattern or practice to create, or have by their actions and /or omissions allowed to exist, conditions, conduct and a climate at the Property which have and continue to adversely affect plaintiffs, in violation of Oakland's Tenant Protection Ordinance (Oakland Municipal Code sec. 8.22.600, et seq., and other state and local laws." Sep. Stmt., No. 11, Jones Decl., Exh. 2, MSJ 23, ¶ 16.h.

The tenants alleged that this campaign was the owners' first order of business. *Immediately* after taking ownership of the hotel, the complaint alleged, the owners did a number of things: i) ceased operating the property's elevator; ii) ceased supplying heat to the rental units; iii) ceased providing 24-hour attendant service at a front desk to screen visitors entering through an unlocked front door; iv) reduced maid service, resulting in garbage being left in hallways and attracting rodents; and v) removed existing mailboxes and restricted tenants' access to their mail. Sep. Stmt.,

Nos. 11-12, Jones Decl., Exh. 2, MSJ 24, ¶ 16.i-n.

In addition, the complaint alleged that at meetings between the new owners and the tenants, the owners told the tenants that they intended to perform major renovation work on the building that would put the rental prices out of the tenants' reach. They also told the tenants that they would have to move out during the renovation. When tenants on the upper floors asked if they could return after the construction, the owners advised that a new beer garden would be placed on the roof, and that tenants could return only if they could pay $2,000 in rent. Otherwise, they would have to move to a lower floor or live at a different hotel or at a house in East Oakland. Sep. Stmt., Nos. 11-12, Jones Decl., Exh. 2, MSJ 25, ¶ 16.o-p.

In addition, the new owners advised the tenants that the renovation would serve to remove the building from the rent control ordinances, and offered to buy the tenants out of their leases. The owners also: i) asked the tenants to agree to voluntarily leave their units for another unit in the building, without proper notice, so that construction could begin; ii) asked them to sign forms agreeing to vacate their units so the building can become a "great place to live," again without proper notice; iii) provided a letter stating that an emergency had arisen because hazardous materials, including asbestos, had been found on the property (which was false), and the tenants had to leave immediately. Sep. Stmt., Nos. 11-12, Jones Decl., Exh. 2, MSJ 25-26, ¶ 16.q-r.

The owners evidently succeeded in clearing many of the tenants but not all. Faced with the recalcitrant tenants, the owners then gutted the entire fifth and sixth floors, except for one tenant's apartment, and gutted the apartments on the other floors. They then created a pathway of large holes through the gutted floors, from the sixth to the first floor, so that debris could be dumped through the holes. Sep. Stmt., Nos. 11-12, Jones Decl., Exh. 2, MSJ 226-27, ¶ 16.i-j.

The remaining tenants promptly advised the owners that the campaign to evict them was illegal. On June 15, 2016, plaintiffs' counsel wrote the owners, advising them that their campaign violated Oakland's Tenant Protection Ordinance. Sep. Stmt., Nos. 11-12, Jones Decl., Exh. 2, MSJ 27, ¶ 16.k. The owners ignored this warning and continued their campaign to drive out the tenants by discontinuing Wi-Fi, "turn[ing] the fifth and sixth floors into a construction zone," and entering the tenants' apartments without permission. Ultimately, plaintiff Daniels succumbed to



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

the tactics and moved out in July 2016. Sep. Stmt., Nos. 11-12, Jones Decl., Exh. 2, MSJ 28, ¶ 16.m-o.

The owners demolished all communal bathrooms but one, and then allowed construction workers to render that one unusable. The workers also demolished the apartment adjoining plaintiff Howe's, knocking holes in his apartment. After repeatedly complaining to the owners about inadequate lighting in stairwells due to the construction work, Howe fell on November 2, 2016, injuring himself.[2] Sep. Stmt., Nos. 11-23 Jones Decl., Exh. 4 MSJ 111 ¶ 16.o. In January 2017, he succumbed to the owners' tactics and moved out. *Id.*

As to plaintiff Chavez, the complaint alleged that he still lives in the unit but suffers due to the campaign of retaliation and construction. Chavez's unit has had gaping holes cut into its walls, allowing cold air to penetrate the unit, and the construction work had cut off the electricity, preventing him from using a wall heater. The construction also allowed water leaks in his closet, damaging some of his belongings. In addition, the complaint alleges that often the owners cut off the water entirely, cut off the hot water, or allowed the water pressure to degrade to the point where water could not reach the units. Sep. Stmt., Nos. 11-12, Jones Decl., Exh. 2, MSJ 112, ¶ 16.q-r.

That this was a planned operation with a clearly-defined goal from the beginning is emphasized by the tenants. As they allege:

> Defendants served tenants at the Property including Plaintiffs with 60-day notices to vacate to do substantial repairs, a justification for eviction under the Oakland Just Cause for Eviction Ordinance. . . . Defendants are not doing repair for purposes of complying with Civil Code § 1941.1, instead Defendants' plan is to reshape the floorplans of the entire floors, including the rooms and removing bathroom and showers located therein, and ultimately "remodeling" in order to justify an exemption from rent control. This scope of work goes well beyond the scope of OMC 8.22.360A(10).

---

[2] This occurred prior to Blackboard's policy period.



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

> Indeed, Defendants themselves, through at least HABER, communicated their intent to obtain a rent-control exemption and re-rent the rooms at much higher rental prices. *Prying the tenants loose from their rooms is Defendants' first order of business*[.]
>
> Sep. Stmt., Nos. 11-23, Jones Decl., Exh. 4, MSJ 113, ¶ 16.s [emphasis added].
>
> Plaintiffs also detailed the owners' retaliation when they fought back:
>
> Following the voluntary dismissals [of eviction actions], Plaintiffs suffered from retaliation when Defendants, for example, issued notices that they were no longer allowed to cook inside their rooms. Thereafter, when some Plaintiffs testified at City Council meetings and/or spoke to the press (who later published their statements), Defendants would retaliate against Plaintiffs including, but not limited to, cutting off their water supply, cutting off their electricity, locking the bathroom, tearing down the communal bathroom, being left without water for days at a time including without the ability to flush toilets, or with only cold water with very low pressure such that they did not really have access to water; or left with scalding hot water (reaching up to 176 degrees).

Sep. Stmt., Nos. 11-23, Jones Decl., Exh. 4, MSJ 2113-114, ¶ 16.t.

The tenants' Second Amended Complaint was framed in causes of action for: i) Violation of Oakland Tenant Protection Ordinance, ii) Breach of Covenant of Quiet Use and Enjoyment, iii) Breach of the Implied Warranty of Habitability (Tort and Contract), iv) Intentional Infliction of Emotional Distress, v) Nuisance, vi) Negligence, vii) Wrongful Endeavor to Recover Possession, viii) Financial Elder Abuse, ix) Violation of the Unruh Civil Rights Act, x) violation of the Fair Employment and Housing Act, and xi) Wrongful Eviction. Sep. Stmt., No. 12, Jones Decl., Exh. 4, MSJ 102-129.

On May 22, 2018, plaintiffs filed a Third Amended Complaint. Sep. Stmt., No. 23, Jones Decl., Exh. 11, MSJ 205. Among the additional allegations were that one of the owners' construction workers, Corey Adams, intentionally attacked Chavez by choking him, pushing him against a wall, shoving him to the ground, and ejecting him from the hotel, shouting "This is a

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

construction zone! No one lives here!" Before the police arrived, the complaint alleges, defendant Ross was seen talking to Mr. Adams. Chavez vacated the premises in July 2017. Sep. Stmt., No. 23, Jones Decl., Exh. 11, MSJ 216.

### C. Blackboard's Proper Denial of Coverage.

On or about February 26, 2018, Mesa Underwriters, which was defending the tenants' action under a reservation of rights, tendered defense of the action to Blackboard. Sep. Stmt., No. 9, Jones Decl.., Exh. 6, MSJ 190. On April 20, 2018, Blackboard's counsel wrote Mesa's coverage counsel, denying coverage on the grounds that the complaint alleged only intentional conduct – i.e., the insureds' deliberate course of action to harass, intimidate and drive the tenants out so that the building could be converted to non-rent control status. In addition, Blackboard's counsel pointed out that the beginning of the campaign against the tenants – from which all later damage flowed – predated Blackboard's policy inception. Sep. Stmt., No. 10, Jones Decl.., Exh. 8, MSJ 189-98.

When Mesa asked Blackboard to reconsider, Blackboard's counsel responded on June 18, 2018. Counsel pointed out that, given the allegations of an intentional, preconceived course of conduct, Coverage B's exclusion for "Knowing Violation of Rights of Another" – barring coverage for personal injury caused by or at the direction of the insured with knowledge that the act would inflict personal injury – also barred coverage. Sep. Stmt., Nos. 11-12, Jones Decl., Exh. 2, MSJ 24, ¶ 16.i-n. Jones Decl.., Exh. 12, MSJ 234-243.

## <u>ARGUMENT</u>

## I. STATEMENT OF ISSUES

Pursuant to Rule 7-4(a)(3), Blackboard frames the issues to be decided in this motion as whether Blackboard owes a duty to defend the insureds against the underlying litigation.

## II. STANDARDS FOR DETERMINING THE DUTY TO DEFEND

An insurer's duty to defend, "although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 19 (1995); *Hotchalk, Inc. v. Scottsdale Ins. Co.,* 217 F. Supp. 3d 1058, 1063 ((N.D.Cal. 2016). An insure can refuse to defend when the complaint alleges intentional, non-accidental conduct not



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

covered by the policy. *See, e.g., Fire Ins. Exch. v. Superior Court*, 181 Cal.App.4th 388, 396 (2010); *Albert v. Mid-Century Ins. Co.*, 236 Cal.App.4th 1281, 1291 (2015). The insured bears the burden of proving that the third party complaint alleges facts falling within the scope of the insuring clause. *Anthem Electronics, Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049, 1059, n. 3 (9th Cir. 2002); *McMillan Cos. LLC v. American Safety Indem. Co.*, 233 Cal.App.4th 518, 533 (2015). Where a complaint demonstrates that the allegations fall outside of policy coverage, the insurer may property refuse to defend. *See, e.g., California Ins. Guar. Ass'n v. Wood*, 217 Cal.App.3d 944, 949 (1990) [complaint showed cause of action arose out of excluded business pursuits].

## III. BLACKBOARD OWES NO DUTY TO DEFEND THE UNDERLYING LITIGATION, BECAUSE THE COMPLAINT ALLEGED NO "ACCIDENT" BUT SIMPLY INTENTIONAL CONDUCT CAUSING DAMAGE THAT PREDATED THE POLICY'S INCEPTION

As set out below, coverage was barred for all of the underlying complaint's allegations by the policy's exclusions for intentional wrongs.

### A. There is No Potential Coverage under Coverage A, because There Is No Accidental Occurrence, the Claims are based on Intentional Conduct, and the Intended Damage was Known to the Insureds prior to Blackboard's policy inception.

Coverage A, as noted, conditions coverage for property damage and bodily injury on the damage having been caused by an "occurrence," i.e., an accident. In addition, Coverage A excludes damages caused by intentional conduct.

As set forth above, the tenants did not plead an "accident" in the underlying complaint. To the contrary, the overriding theme of their complaint is that the owners engaged in a calculated course of conduct – i.e., cutting services and beginning construction – to drive the tenants out so that the building could be rehabbed out of rent-control status. There was no accident.

Under California law, a preconceived course of conduct with an intent to harm cannot be an "occurrence," as explained in *Delgado v. Interinsurance. Exch. of Automobile Club*, 47 Cal.4th



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

302 (2009). There, the insured hit and kicked a 17-year-old, who later sued him, alleging intentional tort and negligence. The court found no occurrence, explaining:

> an injury-producing event is not an "accident" within the policy's coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor. Here, insured Reid's assault and battery on Delgado were acts done with the intent to cause injury; there is no allegation in the complaint that the acts themselves were merely shielding or the result of a reflex action. Therefore, the injuries were not as a matter of law accidental, and consequently there is no potential for coverage under the policy.

*Delgado v. Interinsurance Exchange of Automobile Club of Southern California supra*, 47 Cal.4th at 311-312 [citations omitted].[3]

In fact, in this precise situation – the insured's intentional act of eviction – a court found no occurrence. In *Swain v. California Casualty Ins. Co.* (2002) 99 Cal.App.4th 1, former tenants sued the insureds for wrongful eviction. They alleged that the insureds had evicted them under the false pretense that they were going to move into the property, but they never did. The court found no duty to defend the resulting allegations of wrongful eviction and negligence, because there was no accident, all acts leading up to and including the eviction having been done intentionally by the insureds. *Swain*, *supra*, 99 Cal.App.4th 1, 7-8.

And, in a case virtually identical to the present one, *Burlington Ins. Co. v. Devdhara*

---

[3] *See also State Farm Fire & Cas. Co. v. Superior* Court, 164 Cal.App.4th 317, 328 (2008) [no occurrence where insured meant to throw friend in pool but ended up throwing him on concrete apron]; *Merced Mutual Ins. Co. v. Mendez*, 213 Cal.App.3d 41 (1989) [oral copulation and attempted oral copulation not accidents notwithstanding insured's mistaken belief that victim consented]; *Collin v. American Empire Ins. Co.*, 21 Cal.App.4th 787 (1994) [misunderstanding of legal rights did not turn conversion of property into an accident]; *Quan v. Truck Ins. Exchange*, 67 Cal.App.4th 583 (1998) [rape not transformed into an accident notwithstanding insured's mistaken belief that victim consented]; *Lyons v. Fire Ins. Exchange*, 161 Cal.App.4th 880 (2008) [insured's subjective miscalculation of victim's state of mind did not make sexual attack an accident]; *J. C. Penney Casualty Ins. Co. v. M. K.*, 52 Cal.3d 1009 (1991) [homeowners policy as a matter of law did not provide coverage for child molestation regardless of lack of intent to harm].

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

(N.D.Cal. Sep. 23, 2010, No. C 09-00421 SBA) 2010 U.S.Dist.LEXIS 99955, the Northern District of California found no accident. There, the insureds, owners of a low-income residential hotel, were sued by tenants for habitability causes of action. *See Burlington Ins. Co. v. Devdhara*, 2010 U.S.Dist.LEXIS 99955, at *6. The gist of the action was that the owners had "willfully failed and/or refused to correct various defective conditions at the Auburn Hotel, thereby causing the Tenants to suffer damages in overpaid rent, to lose full use of the premises, and to suffer annoyance and discomfort.", *Burlington Ins. Co. v. Devdhara* (N.D.Cal. Sep. 23, 2010 U.S.Dist.LEXIS 99955, at *26.

In light of those allegations, the court concluded that the "claims do not arise from an 'occurrence'," because the "Tenants alleged that Defendants purposefully failed to repair and maintain the Auburn Hotel in a habitable condition, and knowingly continued to collect rent. Those actions are not 'accidents' covered by the Policies." *Burlington Ins. Co. v. Devdhara*, 2010 U.S.Dist.LEXIS 99955, at *26-27.[4]

Moving parties nonetheless attempt to cast the tenants' allegations as reflecting a simple failure by the owners to properly supervise the construction workers rehabbing the building. Motion, p. 14-15. That is *not* what the complaint alleges. Rather, as set forth above, the tenants clearly allege that the owners determined to oust them by making living conditions intolerable in the building, including by beginning the rehab process while the tenants were still living there. Therefore, the resulting harm was, according to the tenants' allegations, the precisely-planned result of the owners' "first order of business."

Moving parties' citation of *Davidson v. Welch* (1969) 270 Cal.App.2d 220, 238 is

---

[4] It should be noted that the mere inclusion of negligence-based counts in a complaint does not automatically create a covered occurrence. In *Swain v. California Casualty Ins. Co.*, supra, 99 Cal.App.4th at 8, the court rejected the argument that the complaint's negligence claim triggered a duty to defend. The court explained that "coverage turns not on 'the technical legal cause of action pleaded by the third party' but on the 'facts alleged in the underlying complaint' or otherwise known to the insurer. A general boilerplate pleading of 'negligence' adds nothing to a complaint otherwise devoid of facts giving rise to a potential for covered liability." *Swain v. California Casualty Ins. Co.*, supra, 99 Cal.App.4th at 8; *see also Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.* (C.D. Cal. 2013) 957 F.Supp.2d 1135, 1155 [following *Swain*].



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

inapposite because there the court considered whether an indemnitor was relieved of his indemnity obligation due to the indemnitee's intentional tort – not whether the indemnitee's conduct constituted an "accident" under the insuring clause. Similarly, *Allstate Ins. Co. v. Overton* (1984) 160 Cal.App.3d 843, 851, involved the interpretation of an intentional act exclusion, not whether the insured's alleged conduct constituted an "accident" under the policy's insuring clause.

Lastly, the claims are barred under Coverage A because the insureds knew of the property damage and bodily injury prior to the policy period. As noted, the insuring clause conditions coverage on no insured having known, prior to the policy period, that the bodily injury or property damage had occurred, in whole or in part. If an insured was aware of such damage, then the bodily injury and property damage that subsequently occurs is deemed to have occurred prior to the policy period.

Here, the complaint alleges that since April 1, 2016 – before Blackboard's policy incepted – the owners embarked on their campaign to drive out the tenants, causing property damage and bodily injury, and continued to do so through Blackboard's policy period. In addition, the complaint alleges that the owners were aware that their conduct violated the law, since on June 15, 2016 – also before Blackboard's policy – the tenants' counsel notified the owners that their campaign was illegal. A tenant fell and suffered bodily injury due to the deteriorating conditions the owners engineered. Thus, the insureds knew that property damage and bodily injury were occurring prior to the policy period due to their campaign. And, since they then continued their campaign of harassment and retaliation once Blackboard's policy incepted, the inevitable bodily injury and property damage that later resulted is deemed to have predated the policy period.

Nonetheless, moving parties argue that there is no allegation that the owners knew about *all of the wrongdoing* during the rehab process. But, under these circumstances, moving parties' authorities miss the mark. For instance, *Chu v. Canadian Indem. Co.* (1990) 224 Cal.App.3d 86, 97-98, did not construe an exclusion similar to that in Blackboard's policy, but considered whether the insured developer was aware of defects in his development before the policy incepted. The court only held that where the project had a myriad number of defects, the fact that the developer was aware of some defects did not mean he was aware of all. Likewise, in *Pines of La Jolla*

Manning & Kass Ellrod, Ramirez, Trester LLP Attorneys at Law

*Homeowners Assn. v. Industrial Indemnity* (1992) 5 Cal.App.4th 714, 722, n. 5 (overruled on other grounds in *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 685), the court only held that where multiple construction defects are alleged, each defect must be analyzed for purposes of determining whether the "known loss" rule applies.

Here, in contrast, the insured owners hatched their plan to interfere with the tenants' occupancy rights and cause property damage and bodily injury by decreasing building services and beginning construction in an effort to drive the recalcitrant tenants out. This decision was made before Blackboard's policy and resulted in property damage and bodily injury prior to the policy period that the owners were aware of. Because the campaign continued, the damage inevitably continued through Blackboard's policy period. Under these circumstances, there is no coverage.

**B. There is No Potential Coverage under Coverage B.**

Coverage B provides coverage for certain personal injury "offenses," including wrongful eviction, wrongful entry, and invasion of the right of private occupancy. Moving parties claim that these offenses are clearly implicated by the tenants' underlying complaint. While that may be true, moving parties fail to recognize that a *knowing* wrongful eviction, wrongful entry, or invasion of the right of private occupancy done with the *alleged intent* to violate the rights of the victim is unambiguously excluded under the policy. Thus, while Coverage B covers intentional acts (unlike Coverage A), the "knowing violation" clause excludes intentional acts done with the intent to injure others. Further, it excludes not only acts done by the insured with the intent to injure, but also acts done by others as the direction of the insured.

Here, the tenants' complaint alleges a calculated decision to commit the very personal injury offenses at issue – invasion of the right of private occupancy, wrongful entry, and wrongful eviction. There is no ambiguity in plaintiffs' allegations that the insureds intended that these offenses would occur; the entire plan, again, was to interfere with the tenants' rights so that they would leave the building. Under those allegations, the "knowing violation" exclusion is triggered.

While no California court appears to have considered the exclusion in this context, courts from other jurisdictions have applied it in analogous circumstances to those here. For example, in

*Travelers Prop. Cas. Co. of Am. v. Mericle* (M.D.Pa. Aug. 31, 2010, No. 3:09-CV-1747) 2010 U.S.Dist.LEXIS 90394, the court, applying Pennsylvania law, considered whether the "knowing violation" exclusion relieved a carrier of the duty to defend an underlying lawsuit against an insured corporation based on the Coverage B offense of "wrongful imprisonment." The litigation alleged that the insured corporation, having built juvenile detention facilities, had conspired with local judges to receive kickbacks for maintaining a high rate of occupancy in the facilities by denying juveniles due process. Observing that the underlying complaint alleged that the juveniles were falsely imprisoned at the direction of the insureds, knowing that the juvenile's rights would be violated, the court found that the "knowing violations" exclusion barred the duty to defend. *Travelers Prop. Cas. Co. of Am. v. Mericle*, *supra*, 2010 U.S.Dist.LEXIS 90394, at *27-28; *accord*, *Markel Int'l Ins. Co. v. W. PA Child Care*, LLC (M.D.Pa. 2011) 805 F.Supp.2d 88, 94 [where complaint alleged knowing violation of constitutional rights, "knowing violation" exclusion bars duty to defend under Pennsylvania law].

Similarly, in *Nationwide Ins. Co. v Lexington Relocation Servs., LLC* (N.D.Miss. Mar. 24, 2014, No. 1:12CV181-SA-DAS) 2014 U.S.Dist.LEXIS 38308, at 36, the court applied Mississippi law to find that the knowing violation exclusion excused the insurer's duty to defend the insured under Coverage B where it was alleged that the insured had knowingly employed a competitor's employee and misused confidential information provided by the employee. Likewise, in *Marvisi v. Greenwich Ins. Co.* (S.D.N.Y. May 22, 2006, No. 04 CV 6733 (TPG)) 2006 U.S.Dist.LEXIS 32840, the court, applying New York law, found no duty to defend under Coverage B when the lawsuit alleged that the insured had knowingly permitted the insured premises to be used for the sale of counterfeit goods that infringed the plaintiffs' trademarks. The court explained: "Such alleged conduct -- i.e., knowingly permitting his property to be used for illegal purposes, is certainly 'caused by or at the direction of the insured'." *Id.* at 16.

Moving parties argue, nonetheless, that Blackboard would have to prove that the knowing violation exclusion would apply in all possible circumstances to avoid the duty to defend. Moving papers, p. 13. For this argument, moving parties rely on *Atlantic Mut. Ins. Co. v. J. Lamb*, 100 Cal.App.4th 1017, 138-39 (2002). But in *Lamb*, the issue was whether an exclusion to Coverage B



MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

– the "first publication" exclusion for disparagement – barred the duty to defend. The court held that it did not, because the date of first publication could not be determined on the complaint's face, since it did not specify the date of the first publication. *Atlantic Mut. Ins. Co. v. J. Lamb*, *supra*, 100 Cal.App.4th at 1038. Here, in contrast, the tenants' complaint is not ambiguous in its allegations that the owners intentionally set out to interfere with the tenant' rights by driving them out of the building by committing the personal injury offenses. Because the tenants' complaint is unambiguous on that allegation, *Lamb* is inapposite.

Lastly, no insured would have reasonably expected insurance coverage for a campaign to drive out tenants from a rent-controlled building so that higher rents could be charged. *See, e.g.*, *B& E Convalescent Ctr. v. State Comp. Ins. Fund*, 8 Cal.App.4th 78, 99 (1992) [no duty to defend wrongful discharge action based on claims that employer's conduct violated federal and statute statutes].

## IV. CONCLUSION

For all the foregoing reasons, Defendant Blackboard Specialty Insurance Company respectfully requests that the Court deny the Joint Motion for Partial Summary Judgment on the Duty to Defend filed by Mesa Underwriters Specialty Insurance Company and NDO Group, LLC, YPP LLC, Danny Haber, Aon Gutman, and Dion Ross, and grant Blackboard Specialty Insurance Company's Motion for Summary Judgment against those parties.

DATED: April 2, 2019

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: ______________________
James E. Gibbons
Attorneys for BLACKBOARD SPECIALTY INSURANCE COMPANY formerly known as HAMILTON SPECIALTY INSURANCE COMPANY

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW